# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY MICHAEL BELLES, | : | Civil No. 3:10-CV-0184 |
| Plaintiff, | : | |
| | : | (Judge Caputo) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| LACKAWANNA COUNTY CHILDREN AND YOUTH, et al., | : | |
| Defendants | : | |

## MEMORANDUM AND ORDER

This is a *pro se* civil rights complaint brought by Timothy Belles, who complains that Lackawanna County Children and Youth have unjustifiably denied him the right to supervise his younger siblings. According to Mr. Belles, the decision to deny him supervision of these children is due to some unspecified "alleged incident" involving Belles that took place 17 years ago. While Mr. Belles does not specify what this "incident" involved, he does specify the relief which he seeks in his complaint: According to his complaint the plaintiff wishes to hold the defendants liable for "lible [sic], slander, and defamation of character and undue emotional stress and alienation of affection." (Doc. 1.) Mr. Belles also urges that this Court find that Lackawanna County Children and Youth should be required to prove beyond a reasonable doubt that he presents a danger to these children before that agency can

be permitted to restrict his supervision of these children. While Mr. Belles' complaint does not explain the current supervision arrangements relating to these children in detail, the involvement of the children and youth agency in this matter strongly suggests that these children may be under some form of state court supervision, and that any action by this Court may intrude into matters which are the subject of prior state litigation. Along with his complaint Mr. Belles has filed a motion for leave to proceed *in forma pauperis*. (Doc. 2.) The Court will **GRANT** the plaintiff leave to proceed *in forma pauperis*, but will place the plaintiff on notice that his complaint is subject to dismissal and will direct that an amended complaint be filed in this case.

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by plaintiffs given leave to proceed *in forma pauperis* in cases which seek redress against government officials. See 28 U.S.C. § 1915(e)(2)(B)(ii). Specifically, the Court must assess whether a *pro se* complaint fails to state a claim upon which relief may be granted, since Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In addition, when reviewing *in forma pauperis* complaints, 28 U.S.C. § 1915(e)(2)(B)(ii) specifically enjoins us to "dismiss the complaint at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted." With respect to

this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has recently aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (12007) continuing with our opinion in Phillips [v. County of Allegheny, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in Ashcroft v. Iqbal –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

Fowler v. UPMC Shadyside, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom are to be construed in the light most favorable to the plaintiff. Jordan v. Fox Rothschild, O'Brien & Frankel, Inc., 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged." Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic

3

Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of actions will not do." Id. at 555. "Factual allegations must be enough to raise a right to relief above the speculative level." Id. In keeping with the principles of Twombly, the Supreme Court recently underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss. In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949. Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

4

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.' In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In our view, these heightened pleading standards apply to all aspects of the Court's threshold analysis of a complaint's legal sufficiency. Thus, we will apply this analysis both when assessing the adequacy of the factual assertions set forth in the complaint, and when examining whether a complaint names proper parties to the lawsuit.

Applying this standard, the Court places the plaintiff on notice that some of the allegations in the *pro se* complaint may be subject to dismissal for failure to state a claim upon which relief can be granted. The initial review of the Plaintiff's complaint has identified the following deficiencies in this pleading:

At the outset, this complaint may fail because of the "domestic relations" doctrine, which generally forbids federal court adjudication of state child custody matters. See Akenbrandt v. Richards, 504 U.S. 689, 703 (1992).

In addition, to the extent that there have been state court proceedings relating to the placement of these children this complaint may also fail because this court may lack subject matter jurisdiction over the issues raised by the plaintiff, may call upon this federal court in a civil rights case to review, re-examine and reject state court rulings in a state domestic relations case. This we cannot do. Indeed, the United States Supreme Court has spoken to this issue and has announced a rule, the Rooker-Feldman doctrine, which compels federal district courts to decline invitations to conduct what amounts to appellate review of state trial court decisions. As described by the Third Circuit:

> That doctrine takes its name from the two Supreme Court cases that gave rise to the doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). The doctrine is derived from 28 U.S.C. § 1257 which states that "[f]inal judgments or decrees rendered by the highest court of a state in which a decision could be had, may be reviewed by the Supreme Court....". See also Desi's Pizza, Inc. v. City of Wilkes Barre, 321 F.3d 411, 419 (3d Cir.2003). "Since Congress has never conferred a similar power of review on the United States District Courts, the Supreme Court has inferred that Congress did not intend to empower District Courts to review state court decisions." Desi's Pizza, 321 F.3d at 419.

Gary v. Braddock Cemetery, 517 F.3d 195, 200 (3d. Cir 2008).

Because federal district courts are not empowered by law to sit as reviewing courts, reexamining state court decisions, "[t]he Rooker-Feldman doctrine deprives a federal district court of jurisdiction in some circumstances to review a state court adjudication." Turner v. Crawford Square Apartments III, LLP,, 449 F.3d 542, 547 (3d Cir. 2006). Cases construing this jurisdictional limit on the power of federal courts have quite appropriately:

> [E]mphasized the narrow scope of the Rooker-Feldman doctrine, holding that it "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."[Exxon Mobil Corp. v. Saudi Basic Industries Corp.], 544 U.S. at 284, 125 S.Ct. at 1521-22; see also Lance v. Dennis, 546 U.S. 459, ----, 126 S.Ct. 1198, 1201, 163 L.Ed.2d 1059 (2006)

Turner, 449 F.3d at 547.

However, even within these narrowly drawn confines, it has been consistently recognized that the Rooker-Feldman doctrine prevents federal judges from considering civil rights lawsuits which seek to re-examine state domestic relations court rulings that are presented "by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced."

7

Kwasnik v. Leblon, 228 F. App'x 238, 242 (3d Cir. 2007). In such instances, the federal courts have typically deferred to the state court domestic relations decisions, and rebuffed efforts to use federal civil rights laws to review, or reverse, those state court rulings. See, e.g., Marran v. Marran, 376 F.3d 143 (3d. Cir. 2004); Kwasnik 228 F. App'x 238, 242; Smith v. Department of Human Services, 198 F. App'x 227 (3d Cir. 2006); Rose v. County of York, No. 05-5820, 2007 WL 136682 (E.D. Pa. Jan. 12, 2007).

In addition, this complaint may also run afoul of basic constitutional and statutory rules limiting lawsuits against state agencies and officials. First, as a matter of constitutional law, the Eleventh Amendment to the Constitution provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the . . . States . . . .", U. S. Const. Amend XI. By its terms, the Eleventh Amendment strictly limits the power of federal courts to entertain cases brought by citizens against the state and state agencies. Moreover, a suit brought against an individual acting in his or her official capacity constitutes a suit against the state and therefore also is barred by the Eleventh Amendment. Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989).

Pursuant to the Eleventh Amendment, states, state agencies and state officials who are sued in their official capacity are generally immune from lawsuits in federal

courts brought against them by citizens. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). The constitutional protections afforded to the states and the state court system under the Eleventh Amendment also expressly apply to the state agencies that are integral parts of Pennsylvania's unitary court system. These court agencies, which also enjoy immunity from lawsuit under the Eleventh Amendment, include the various county common pleas court domestic relations agencies which are defined by statute as arms of the state courts, and institutions of state government. See, e.g., Walters v. Washington County, No. 06-1355, 2009 WL 7936639 (W.D. Pa. March 23, 2009);Van Tassel v. Lawrence County Domestics Relations Section, No. 09-266, 2009 WL 3052411 (W.D. Pa. Sept. 22, 2009). Absent an express waiver of the immunity established by the Eleventh Amendment, all of these agencies, and their employees who are sued in their official capacities, are absolutely immune from lawsuits in federal court. Moreover as a matter of statutory interpretation, the plaintiff cannot bring a damages action against these state agencies or state officials in their official capacity since it is well-settled that a state, a state agency, or a state official acting in an official capacity is not a "person" within the meaning of 42 U.S.C. §1983. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 71 (1989).

Finally, to the extent that the complaint seeks to hold state judicial agency employees like Domestics Relations agency staff personally liable for damages, it is

9

well-settled that these officials are also individually cloaked with immunity from liability. The United States Supreme Court has long recognized that those officials performing judicial, quasi-judicial, and prosecutorial functions in our adversarial system must be entitled to some measure of protection from personal liability for acts taken in their official capacities. In order to provide this degree of protection from liability for judicial officials, the courts have held that judges, Mireless v. Waco, 502 U.S. 9, 13 (1991); prosecutors, Imbler v. Pachtman, 424 U.S. 409, 427 (1976); and those who perform adjudicative functions, Imbler, 424 U.S. at 423 n. 20 (grand jurors); Harper v. Jeffries, 808 F.2d 281, 284 (3d. Cir. 1986)(parole board adjudicators); are entitled to immunity from personal liability for actions they take in our adversarial system of justice. The scope of these protections extend beyond judges and prosecutors to those who take discretionary actions at the direction of the courts. As this court has observed:

> Quasi-judicial officers, who act in accordance with their duties or at the direction of a judicial officer, also are immune from suit. *See Gallas,* 211 F.3d at 772-73 (court administrator entitled to immunity for release of information ordered by a judge); Lockhart v. Hoenstine, 411 F.2d 455, 460 (3d Cir.1969) (holding that prothonotary, acting under court direction, was immune from suit). The doctrine of absolute quasi-judicial immunity has been applied to court support personnel due to "the danger that disappointed litigants, blocked by the doctrine of absolute immunity from suing the judge directly, will vent their wrath on clerks, court reporters, and other judicial adjuncts." Kincaid v. Vail, 969 F.2d 594, 601 (7th Cir.1992). See also Johnson v. Kegans, 870 F.2d

> 992, 995 (5th Cir.1989) ("Prosecutors and other necessary participants in the judicial process enjoy quasi-judicial immunity as well.").Quasi-judicial absolute immunity is available to those individuals, such as Defendants Kline and Brewer, who perform functions closely associated with the judicial process. <u>Marcedes v. Barrett</u>, 453 F.2d 391 (3d Cir.1971) (holding that quasi-judicial immunity applied to clerk of courts, an administrative assistant to the president judge and a court reporter); <u>Henig v. Odorioso</u>, 385 F.2d 491, 494 (3d Cir.1967) (holding that judiciary employees executing judicial orders are immune from suit); <u>Davis v. Philadelphia County</u>, 195 F.Supp.2d 686 (E.D.Pa.2002) (holding that quasi-judicial immunity applies to court staff, such as clerks of judicial records and court reporters).

<u>Stout v. Naus</u>, 09-390, 2009 WL 1794989, at 3 (M.D. Pa. 2009)(McClure, J.).

These longstanding common law immunities for judicial, quasi-judicial, and prosecutorial officials may directly apply here and would also prevent the plaintiff from maintaining this civil action for damages against the individual defendant he has named in his complaint. This immunity embraces court personnel like Domestic Relations staff, who perform discretionary functions under the guidance and direction of the courts. Indeed, courts have specifically held that Domestics Relations agency staff are entitled to assert this immunity in civil rights actions. For example, in <u>Slawek v. White</u>, No. 91-1164, 1992 WL 68247, at 3 (E.D. Pa. 1992), the court conferred this immunity on domestic relations personnel, noting that such immunity was consistent with case law and stating:

> In Hamill v. Wright, 870 F.2d 1032, 1037 (5th Cir.1989), a director of the domestic relations office was declared to be "entitled to full prosecutorial immunity from damages because his decision to bring contempt proceedings and his participation in those proceedings was pursuant to his quasi-judicial duties." (citing Imbler v. Pachtman, 424 U.S. 409, 96 S.Ct. 984 (1976)). Here, these Domestic Relations officials' conduct, under the facts relied upon by the Plaintiff, in continuing to prosecute the paternity claim was pursuant to Pennsylvania law and Judge Salas' directives, and as such are entitled to immunity.

Slawek, 1992 WL 68247, at 4. See, e.g., Buchanan v. Gay, 491 F. Supp.2d 483 (D. Del. 2007); White v. Green, No. 09-1219, 2009 WL 2412490 (E.D. Pa. 2009); Johnson v. Lancaster County Children and Youth, No. 92-7135, 1993 WL 245280 (E.D. Pa. 1993).

Thus, entirely aside from the jurisdictional flaws in this case, and the constitutional immunity conferred upon the state by the Eleventh Amendment, this action may fail against the individual defendant named in the complaint because that defendant is entitled to immunity from personal liability for their official actions in the judicial system.

At present, without the inclusion of some further well-pleaded factual allegations, the complaint contains little more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, [which as a legal matter] do not suffice." Ashcroft v. Iqbal, supra 127 S.Ct. at 1979. We

recognize, however, that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. V. Pote Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Since this *pro se* complaint may not contain sufficient factual recitals to state a claim upon which relief may be granted, the plaintiff is placed on notice that these allegations may be subject to dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The Court will, however, provide the plaintiff with an opportunity to correct this potential deficiency in the *pro se* complaint, and avoid the possible sanction of dismissal of claims. Accordingly, **IT IS ORDERED** that:

    1. The plaintiff is **GRANTED** leave to proceed *in forma pauperis*, but the plaintiff is advised to file an amended complaint on or before **February 26, 2010**. Any amended complaint shall be complete in all respects, and should address the issues raised by this Order. It shall be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed. Any amended complaint shall be titled as an amended complaint and shall contain the docket number of this case.

2. If the plaintiff fails to file an amended complaint by **February 26, 2010**, the Court will assume that the plaintiff cannot provide further well-pleaded facts in support of this complaint, and will make appropriate recommendations regarding whether the complaint should be dismissed, in part, for failure to state a claim upon which relief may be granted.

3. The Clerk is directed to mail a copy of this Order to the Plaintiff.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

Dated: January 27, 2010